UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MAURICE DOONA,

                        Plaintiff,

      v.                                      **REPORT AND
RECOMMENDATION**

ONESOURCE HOLDINGS, INC.,                     06-CV-894 (DLI)(VVP)

                        Defendant.
----------------------------------------------------------------x

POHORELSKY, M.J.:

      The plaintiff, Maurice F. Doona, brings this personal injury action against the defendant, OneSource Holdings, Inc., alleging that he suffered severe injury as a result of the defendant's negligence in maintaining the restroom at Mr. Doona's place of employment. *See* 28 U.S.C. § 1332. Having completed discovery, the defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), and Judge Irizarry has referred the defendant's motion to the undersigned for a report and recommendation. The defendant's principal argument on this motion is that there is no evidence it had notice of the condition that led to the plaintiff's injury. For the following reasons, the undersigned recommends that the defendant's summary judgment motion be GRANTED and that the action be dismissed.

## BACKGROUND

      Mr. Doona is an aircraft maintenance technician employed by American Airlines, Inc. ("American"). *See* Deposition Transcript of Maurice Doona ("Doona Dep.") at 10, annexed as Ex. C to Motola Declaration In Support Of Motion For Summary Judgment ("Motola Decl."), dated April 4, 2007. During the relevant period, Mr. Doona worked at John F. Kennedy International Airport in Queens, New York ("JFK Airport"), where American maintains several hangars for storing and servicing airplanes. (Doona Dep. at 13-14, 22). On June 23, 2005, Mr.

Doona was assigned to a shift at Hanger Number 10, Bay Number 3, beginning at 9:00 p.m. and scheduled to work through 5:30 a.m. (Doona Dep. at 22-23). At approximately 9:10 p.m., Mr. Doona entered the men's restroom in Hangar 10, Bay 3. (Doona Dep. at 22, 26). The restroom was open to employees, visitors, contractors, and others authorized to be present in the hangar. (Doona Dep. at 26-27). As Mr. Doona entered the restroom and was proceeding toward a urinal to his right, he slipped on a puddle of water approximately two and one-half to three feet from the entrance to the lavatory, and fell to floor. (Doona Dep. at 27-29, 32). He had not seen anything on the floor prior to the accident, and estimates that the puddle was two feet by one and one-half to two feet in area. (Doona Dep. at 28). Mr. Doona was unable to say how long the puddle had been there, how it had gotten there, or whether anyone had complained about it or reported it. (Doona Dep. at 33). Mr. Doona testified that he had observed puddles on the restroom floor approximately seven times over a period of fourteen years prior to his accident, but had never reported the puddles to anyone. (Doona Dep. at 31-32). Nor was Mr. Doona aware of any complaints others might have made about the condition of the restroom floor. (Doona Dep. at 32). Mr. Doona was forced to miss work, and received extensive medical treatment, including surgery for the injuries he sustained to his wrist and hand, but the extent of his injuries is not implicated by the defendant's instant motion. (Doona Dep. at 40-63).

At the time of the incident, the defendant OneSource had a contract with American to provide "janitorial services" at the American facilities at JFK, including in the restrooms where the plaintiff was injured. *See* Deposition Transcript of Gonzalo Beltran ("Beltran Dep.") at 5-10, annexed as Ex. D to Motola Decl.; Services Agreement, annexed as Ex. F to Motola Decl. The contract required OneSource to clean offices, restrooms, and the hangar floors. (Beltran Dep. at

7). OneSource employees were continuously present 24 hours a day and 7 days a week to, among other things, clean the restrooms in Hangar 10. (Beltran Dep. at 6, 8-9). Mr. Beltran testified that the person assigned to clean the restroom in Hangar 10, Bay 3, would be expected to enter the restroom and clean it between five and eight times over that employee's eight-hour shift, or to police it roughly once an hour for spills and to ensure that the toilets were clean and the floors were dry. (Beltran Dep. at 11-12). Mr. Beltran estimated that on the day of Mr. Doona's accident, OneSource employees would have manned three separate shifts at Hangar 10: from 1:30 p.m. to 10:00 p.m., from 9:30 p.m. to 6:00 a.m, and from 5:30 a.m to 2:00 p.m. (Beltran Dep. at 8-9, 14).

OneSource employees when cleaning the restrooms, used a wet mop, a bucket, and a cart equipped with cleaning fluids and a sign indicating that the floor was wet. There is no evidence that such a sign was present when Mr. Doona injured himself. (Beltran Dep. at 11-13). Mr. Beltran also testified about radio procedures available to American employees to notify OneSource in the event of a puddle on the restroom floors. (Beltran Dep. at 16-17). He did not recall, however, having ever received any such complaints prior to June 2005. (Beltran Dep. at 16-17). Lastly, Mr. Beltran testified that OneSource was not responsible for maintaining the plumbing in American's restrooms; American retained responsibility for that task, and in the event of a plumbing leak, a OneSource employee would typically post a sign in the restroom until American had addressed or repaired the problem. (Beltran Dep. at 19). The janitorial coverage specified in the services agreement does not include plumbing maintenance or repair. *See* Services Agreement, Attachments 1A, 1C, 1F. Mr. Beltran was not aware of the puddle on

June 23, 2005, and stated that he never observed any puddles in the Hangar 10 restrooms prior to Mr. Doona's accident. (Beltran Dep. at 21-22).

## DISCUSSION

**I.     Summary Judgment Standard**

The defendants' motion for summary judgment will be granted if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the defendants as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Inst. for Shipboard Educ. v. Cigna Worldwide Inc. Co.,* 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict for the plaintiffs, then a material issue of fact remains in contention and the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). On the other hand, if the evidence in favor of the non-movant is "merely colorable" or insufficient for a jury to find in his favor, summary judgment may be granted. *Id.* at 248-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967)). The materiality of the facts is determined by the substantive law governing the claims. *Id.* at 248.

The burden of proving that no material issue of fact remains in dispute rests on the moving party, in this case, the defendant. *Celotex Corp.,* 477 U.S. at 322; *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). However, "[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga*, 51 F.3d at 18; *see also Celotex*, 477 U.S. at 325 (determining that the movant's burden may be "discharged by 'showing' – that is, by pointing out to the district court – that there is an absence of evidence to support the nonmoving party's

4

case."). If the moving party meets that initial burden, the burden then shifts to the non-moving party to produce evidence raising a material question of fact.[1] *See* Fed. R. Civ. Pro. 56(e); *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008).

As it is the defendant who moved for summary judgment, the plaintiff must set forth specific factual allegations to avoid summary judgment. *Kurisoo v. Providence and Worcester R.R. Co.,* 68 F.3d 591, 594 (2d Cir. 1995); *Fahle v Braslow*, 913 F. Supp. 145, 149 (E.D.N.Y. 1996) (citations omitted). In this vein, conclusory, *ipse dixit* allegations or assertions are not sufficient to defeat the defendant's summary judgment motion. *Western World Inc. v. Stock Oil Inc.,* 922 F.2d 118, 121 (2d Cir. 1990). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient' to defeat summary judgment. Rather, 'there must be evidence on which the jury could *reasonably* find for the plaintiff.' Moreover, the opposing party must set forth 'concrete particulars' showing that a trial is needed." *Cousin v. White Castle System, Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *4 (E.D.N.Y. July 6, 2009) (quoting *Anderson*, 477 U.S. at 252). Although the plaintiff need not produce evidence in a form that would be admissible at trial, the non-moving party cannot rest on the pleadings, and must set forth specific facts in affidavits, depositions, answers to interrogatories, or admissions on file, which together demonstrate a genuine issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp.,* 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994). Any ambiguities and all inferences must be drawn in favor of the non-movant, and the court must view the evidence in

---

[1] If the plaintiff lacks proof as to an essential element of his claim, there can be no genuine issue of material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. This is why showing a fatal absence of proof on the plaintiff's part allows the defendant to meet its Rule 56 burden of showing no genuine issue of material fact.

the light most favorable to the non-movant. *Inst. for Shipboard Educ.*, 22 F.3d at 418; *Twin Labs, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).

The parties appear to agree that New York substantive law applies, inasmuch as the events arose in New York and the cases and law cited are from New York. *See, e.g., Winston v. Marriott Intern., Inc.*, No. 03-CV-6321, 2006 WL 1229111, at *7 (E.D.N.Y. May 8, 2006). The plaintiff has correctly pointed out that under New York law, a defendant who moves for summary judgment in a slip-and-fall case such as the instant action "has the initial burden of demonstrating, prima facie, that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it." *Totten v. Cumberland Farms, Inc.*, 57 A.D.3d 653, 654 (2d Dep't 2008); *see also White Castle System*, 2009 WL 1955555, at *4 n.2 (describing the New York summary judgment standard as requiring the moving defendant to first present "affirmative evidence that it neither created the hazard nor had constructive notice of it"); *Sledge v. Apple Maintenance Servs., Inc.*, No.20572/07, 2009 WL 1099459, at *3-5 (N.Y. Sup. Ct. Apr. 23, 2009) (denying summary dismissal because the defendant could not affirmatively show lack of actual or constructive notice). Only after that burden is satisfied does the court look at the sufficiency of the plaintiff's case. *See Winegrad v. New York Univ. Med. Ctr.,* 476 N.E.2d 642, 643-44 (N.Y. 1985).

While this standard would ordinarily apply in a New York state court, a federal court in this district recently declined to apply this more plaintiff-friendly New York summary judgment standard, and instead chose to apply the federal standard, finding the respective burdens the parties bear in a summary judgment motion to be procedural rather than substantive. *See White Castle System*, 2009 WL 1955555, at *4 n.2; *see also Tingling v. Great Atl. & Pac. Tea Co.*, No.

02-CV-4196, 2003 WL 22973452, at *2 n.2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by [*Erie*] and its progeny, and accordingly, is subject to federal rather than state law.") (citing cases). The analysis employed in those cases appears sound, and no controlling precedent suggests to the contrary. Since the court in this case is sitting in diversity, that same framework under *Erie* would apply. Therefore, the court will apply the federal standard on summary judgment as laid out above, which, once the movant has shown that no material fact is in dispute, shifts to the *non-movant* the burden of demonstrating otherwise through specific factual assertions. *See* Fed. R. Civ. Pro. 56(e)(2). Rule 56 imposes the obligation of so responding on the opposing party, and directs the court to rule for the moving party if the non-movant cannot or does not come forward with such evidence. *See id.*

This distinction between the two standards is important in a case like the instant matter, which relies to a large extent on speculation and inference from a slim set of baseline facts. The defendant in federal court is thus able to rely to a much greater extent on showing an absence of evidence or "gaps" in the plaintiff's case than would be his state counterpart. *Compare Celotex*, 477 U.S. at 325; *Goenaga*, 51 F.3d at 18, *with DeFalco v. BJ's Wholesale Club, Inc.*, 38 A.D.3d 824, 825 (2d Dep't 2007) (stating that defendant movant *cannot* meet his burden on summary judgment by pointing out gaps in the plaintiff's case). But while application of the federal standard is likely to determine how the court rules on the instant motion and may thus dispose of the plaintiff's claims more expeditiously, it is not outcome determinative of the lawsuit, because if the case proceeded to trial, the plaintiff would still be unable to prove that the defendant

created the danger or was on notice of its existence. *See* Discussion *infra*. Either way, since there is a valid federal procedural rule on point, the court will apply the federal standard even in the face of inconsistent state law. *See* Fed. R. Civ. Pro. 56; *Hanna v.* Plumer, 380 U.S. 460, 465 (1965); Erwin Chemerinsky, *Federal Jurisdiction*, § 5.3, 328 (5th ed. 2007). Having determined this question, the court now turns to the specifics of the plaintiff's negligence claim to determine whether the absence of evidence warrants summary judgment in favor of OneSource.

## II.     Plaintiff's Negligence Claim

A plaintiff establishes a *prima facie* case of negligence under New York law by demonstrating (i) the existence of a duty of care owed by the defendant to the plaintiff, (ii) breach of that duty, and (iii) damages or injury proximately caused by the defendant's breach. *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998); *Solomon v. City of New York*, 489 N.E.2d 1294, 1295 (N.Y. 1985). Specifically, with regard to a slip-and-fall, a *prima facie* case requires a showing that the defendant either created the hazard or the dangerous condition, or that it had actual or constructive notice of the condition. *Manning v. Tracy J's, Inc.*, No. 06-CV-956, 2008 WL 1780048, at *5 (S.D.N.Y. Apr. 17, 2008); *Kaufman v. Man-Dell Food Stores, Inc.*, 203 A.D.2d 532, 532-33 (2d Dep't 1994). To be charged with constructive notice, the condition must have been visible and apparent, and must have existed for a sufficient period of time prior to the accident to allow the defendant the opportunity to discover it and take remedial action. *See Manning*, 2008 WL 1780048, at *5; *Gordon v. Am. Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986).

A.      **Duty**

In many cases, the existence of a duty of care running from the defendant to the plaintiff is non-controversial and not in dispute. This is not the case here, as the defendant strenuously asserts that it owed no duty to Mr. Doona in the first instance that would render it liable in tort. It is therefore necessary to address this issue initially, before determining whether OneSource breached that duty by creating the peril or by having actual or constructive notice of the dangerous condition. In the factual circumstances here, however, the issues of duty and breach under New York law are somewhat intertwined.

Under New York law, the breach of a contractual obligation to render services does not generally give rise to tort liability in favor of a non-contracting third-party. *See Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093 (N.Y. 1990); *Kaehler-Hendricks v. Johnson Controls, Inc.*, 58 A.D.3d 604, 605-06 (2d Dep't 2009). Put differently, a contractual agreement between two parties will rarely create a duty in tort that extends to a non-promisee. Inaction in performing a contractual obligation or duty will ordinarily expose the promisor only to a breach of contract action. *See Eaves Brooks*, 556 N.E.2d at 1096. This principle extends to contractual obligations to "maintain and inspect building premises." *Johnson Controls*, 58 A.D.3d at 605. New York recognizes three exceptions to this otherwise broad principle, and will impose a duty and thus potential tort liability arising out of the performance of contractual obligations when one of three factors is present: (1) "where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launches a force or instrument of harm'; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and

9

(3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Espinal*, 773 N.E.2d at 488 (citations omitted); *see also Palka v. Servicemaster Mgt. Servs. Corp.*, 634 N.E.2d 189 (1994) (discussing the third factor); *Eaves Brooks*, 556 N.E.2d at 1096 (discussing detrimental reliance); *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896 (1928) (discussing launch of force of harm).

With regard to launching a force or instrument of harm, courts have fleshed out the vagaries of this language by emphasizing that this test is met when a defendant creates or exacerbates a harmful condition. *See Espinal*, 773 N.E.2d at 490; *Moch*, 159 N.E. at 896. Therefore, a defendant who "undertakes to render services and then negligently creates or exacerbates a dangerous condition may be liable for any resulting injury." *Espinal*, 773 N.E.2d at 489; *Moch*, 159 N.E. at 896; Restatement (Second) of Torts § 324A. In such circumstances, then, a duty would be owed, for which the contractor could be held liable in tort. Paradoxically then, this the rare case in which the question of whether the defendant *breached* a duty may be determinative of whether, as a matter of law, there arose an actionable duty in the first instance. The second exception, inducing the plaintiff's detrimental reliance on the defendant's continued performance of its contractual obligations, generally requires that the plaintiff have knowledge of the contract, and that in the case of inaction, the inaction results in working an injury. *See O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 485 (S.D.N.Y. 2005)*; Eaves Brooks,* 556 N.E.2d at 1096. The third exception, displacing the other contracting party's duty to maintain the premises safely, arises when the agreement is comprehensive and exclusive, such that it constitutes more than a limited undertaking. *See Palka*, 634 N.E.2d at 193-95. In general, this requires more than just janitorial services. *See id.*

Here, the evidence fails to establish that any of the three exceptions is present so as to impose tort liability on the contractor, OneSource, for damages suffered by a third-party non-beneficiary, Mr. Doona. With respect to launching a force or instrument of harm, there is no evidence that OneSource either created (negligently or otherwise) the puddle of water on the floor, or exacerbated it in some way so as to render it more dangerous to the restroom patrons. Therefore, on the basis of the evidence in the record, it cannot be said that OneSource launched a force or instrument of harm. *See Espinal*, 773 N.E.2d at 489-90; *Moch*, 159 N.E. at 896. Secondly, there is no evidence to support the proposition that Mr. Doona detrimentally relied on OneSource's continued performance of its contractual duties with American to police the restrooms, although in the most literal sense that argument could be made. *See Eaves Brooks*, 556 N.E.2d at 1096. Nevertheless, the plaintiff must have knowledge of the underlying contract, and there is nothing to suggest that Mr. Doona was aware of OneSource's contract with American or that somehow OneSource induced the plaintiff's reliance on the continued performance of its contractual duties. *See O'Keefe*, 399 F. Supp. 2d at 485; *Occhino v. Citigroup, Inc.*, No. 03-CV-5259, 2005 WL 2076588, at *7 (E.D.N.Y. Aug. 26, 2005).

Lastly, in contracting to provide janitorial services at JFK Airport, the evidence does not establish that OneSource entirely displaced American's duty to safely maintain its premises. Even if the premises are narrowed to just include the restrooms, American retained responsibility for the maintenance and repair of plumbing in the restrooms. As such, it cannot be said that the agreement was comprehensive or exclusive, or that OneSource, in providing janitorial services, wholly absorbed American's responsibility to safely maintain its premises. *See Crum & Forster Specialty Co. v. Safety Fire Sprinkler Corp.*, 405 F. Supp. 2d 223, 230 (E.D.N.Y. 2005);

*O'Keefe*, 399 F. Supp. 2d at 485-86; *Palka*, 634 N.E.2d at 193-95 (imposing tort liability on the contracting party defendant when its agreement was "comprehensive and exclusive," rendering it the sole privatized provider of a safe and clean premises); *Schmidt v. Promaster Cleaning Serv.*, 281 A.D.2d 468 (2d Dep't 2001) (affirming summary judgment in favor of defendant engaged in cleaning services with plaintiff's employer as a "limited undertaking," and not a comprehensive maintenance obligation). Thus, there is no compelling justification to disturb the well-settled principle of New York law that a "contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Espinal*, 773 N.E.2d at 487. Because there was no duty in tort running from OneSource to Mr. Doona, the plaintiff is unable to present a prima facie case of negligence under New York law. It follows that OneSource is entitled to summary judgment in its favor.

> **B.** <u>Breach</u>

Even if the plaintiff is correct that, under New York law, OneSource owed a duty of care to Mr. Doona as a result of contracting with American, he is unable to show that it breached that duty by either creating the hazard, or allowing it to remain unremedied through the negligent performance of its contractual duties. *See Manning*, 2008 WL 1780048, at *5. The plaintiff has not come forward with evidence that OneSource created, or somehow was responsible for the creation of, the puddle of water on the restroom floor. *See Olsen v. Kmart Corp.*, No. 04-CV-3468, 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005) (requiring the plaintiff to show that the creation of the hazard resulted from an "affirmative, 'deliberate and intentional' act by defendant") (citing cases). Mr. Doona speculates on what *could* have occurred, but has not produced evidence that establishes or leads to a reasonable inference of what in fact, did occur.

He raises the argument that due to the size of the puddle of water on the floor, One Source's employees were not only negligent in failing to attend to it, but may have been directly responsible for it being there. In other words, Mr. Doona suggests that the puddle of water could have resulted from one of OneSource's employees' affirmative, although inadvertent, acts, such as accidentally spilling water from a cleaning bucket. The evidence, however, does not support a reasonable inference that a OneSource employee created the puddle, even if does not foreclose such a possibility. *See Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 2d 218, 220-22 (E.D.N.Y. 1998) (granting summary judgment for defendant on the basis that mere presence of liquid on the floor did not establish who created the danger). "There is no proof, only mere speculation, as to how the substance got on the floor, or whether the defendant or its employees created the condition, and absent evidentiary proof in admissible form to prove otherwise, the plaintiff has not raised a triable issue of fact." *Cooper*, 995 F. Supp. 2d at 221; *see also Gluskin v. National Railroad Passenger Corp.*, No. 92-CV-3814, 1994 WL 285483, at *2 (N.D.N.Y. June 28, 1994) (granting summary judgment in the face of a record "devoid of any evidence that the defendants created the puddle"). Nothing here dictates a result contrary to that in those cases.

Likewise, the plaintiff cannot produce evidence that the defendant had actual or constructive notice of the existence of water on the restroom floor, and relies instead on speculation and conjecture far removed from fact. *See Ortiz v. Pathmark Stores, Inc.*, No. 03-CV-40, 2004 WL 2361674, at *4; *Bogdanovic v. Norrell Health Care Services, Inc.*, 300 A.D.2d 611 (2d Dep't 2002); *Cipolla v. Supermarkets General Corp.*, 215 A.D.2d 346 (2d Dep't 1995). There is no allegation or evidence that OneSource had actual notice of the puddle of water on the restroom floor. It is questionable whether the puddle was "visible and apparent" so as to give

13

rise to constructive notice, though it is not insignificant that Mr. Doona himself failed to notice the water before slipping on it. *See White Castle System*, 2009 WL 1955555, at *8; *Cobb v. Indus. Ltd. P'ship*, No. 98-CV-3549, 1999 WL 115441, at *3 (E.D.N.Y. Jan. 11, 1999). Regardless, the plaintiff cannot show that the water remained on the floor for a long enough period of time before the accident so as to provide OneSource with sufficient opportunity to discover and remedy it. *See Tingling*; 2003 WL 22973452, at *2-3 (granting defendant's summary judgment motion in the absence of "any evidence tending to show how long the allegedly dangerous condition . . . existed prior to [the plaintiff's] accident."). In fact, the plaintiff cannot show any period of time at all in which the puddle of water remained on the floor, except for immediately prior to the accident. Moreover, any such showing would likely be undercut by evidence in the record establishing that OneSource regularly and periodically cleaned the restrooms in question. *See Tingling*, 2003 WL 22973452, at *2 n.2. Therefore, the evidence does not permit a reasonable inference that OneSource had constructive notice of the puddle. *See Anderson v. Cent. Valley Realty Co.*, 300 A.D.2d 422, 423 (2d Dep't 2002); *Torri v. Big V of Kingston, Inc.*, 147 A.D.2d 743, 744-45 (3d Dep't 1989) (finding no constructive notice where the plaintiff did not see the substance on the floor prior to falling and where there was no evidence as to how it got on the floor or how long it had been there). "Although the case law is short on analysis of what showing by a moving defendant is sufficient in [similar][2] circumstances, in no case that we are aware of has a showing such as defendant's, in the absence

---

[2] There, the plaintiff slipped on some fallen grapes in the defendant's supermarket, but was unable to show how long the grapes had been on the floor prior to the accident, and was thus unable to proffer evidence of notice, actual or constructive. *Tingling*, 2003 WL 22973452, at *2-3. Also like in this case, it was undisputed that the defendant's employees policed or inspected the area in question on an hourly basis. *Id.*

of any affirmative evidence of notice, been found to be insufficient." *Tingling*, 2003 WL 22973452, at *2 n.2. Under the federal standard on summary judgment, the plaintiff's showing with regard to notice is insufficient to survive a motion for summary judgment by the defendant. *See* Fed. R. Civ. Pro. 56(e)(2). Because there is an absence of affirmative evidence one way or the other as to creation of the harm or notice of its existence, whoever has the burden at the summary judgment phase of presenting specific, affirmative evidence, is unlikely to prevail. The plaintiff, like the defendant, is unable to produce affirmative evidence of creation or notice of the condition, but because the federal standard requires him to do so to defeat summary judgment, his claims must fail.

The boundaries between fact, inference, and speculation are not always clear, nor is the extent to which a party may rely on inferences drawn from a meager, baseline set of facts in order to defeat a motion seeking summary judgment. What is actually in dispute here is not so much the underlying facts themselves, but rather the allowable inferences to be drawn from them. The defendant does not dispute that a puddle of water was on the floor of the restroom at the time Mr. Doona entered, nor that Mr. Doona slipped on it and injured himself. The parties also do not seriously dispute that the defendant's employees were required to – and in fact, did – clean and maintain the restroom at regular, periodic intervals. But to allow such claims to go forward in the absence of evidence on the length of time that the water was present on the floor, and how it came to be there in the first instance, would be to blur the distinction between logical inference and mere, unsupported speculation and conjecture, a result that the case law does not appear to sanction and that Rule 56 appears to foreclose. While in some cases, there may be legitimate dispute on how much a jury may logically infer from the available evidence, the

15

evidence the plaintiff has produced in this case does not reasonably lead to the inferences that would be required in order for him to prevail on a negligence claim. *See, e.g. Cooper*, 995 F. Supp. 2d at 220-22; *Cent. Valley*, 300 A.D.2d at 422-23. In the absence of such inferences, his claim must fail. There being no genuine issue of material fact, it is appropriate to enter summary judgment in favor of the defendant.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully **REPORTS** and **RECOMMENDS** that the defendant's motion for summary judgment be granted.

\*         \*         \*         \*         \*         \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038 (1992); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir. 1989).

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:    Brooklyn, New York
          October 30, 2009